IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOSE BUENOROSTRO,                          No   C-04-0937 VRW

    Plaintiff                             ORDER

    v

JOHN POTTER, Postmaster General,

    Defendant.
_____/

        Plaintiff Jose Buenorostro (Buenorostro) has filed this suit in pro per against John Potter (Potter) alleging retaliation and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 USC § 2000e et seq (Title VII) and age discrimination in violation of the Age Discrimination in Employment Act, 29 USC § 621 et seq (the ADEA).  Doc #1 (Compl).  Potter moves for summary judgment on all claims.  Doc #28 (MSJ).  Buenorostro opposes.  Doc #39 (Opp).  Based upon the parties' memoranda and the applicable federal law, the court GRANTS Potter's motion.

//

I

The following relevant facts are not in dispute. Buenorostro began his employment with the United States Postal Service (USPS) in 1995 as a clerk and mail handler. On March 13, 1999, he was elevated to a part-time flexible letter carrier for a 90-day probationary period at the Santa Rosa post office. Buenorostro's supervisor at the Santa Rosa post office, Joe Machado, terminated Buenorostro on May 31, 1999, for unacceptable work performance. On August 16, 1999, Buenorostro filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging that Machado terminated him on the basis of age. Doc #34 (Rutter Decl), Ex A8 (EEOC Compl) at 1. Buenorostro's EEOC complaint appears to have been based on direct and circumstantial evidence. As direct evidence, Buenorostro claimed that in September 1998, when he first applied for a position as a letter carrier, Terri Thomas, a USPS supervisor, informed Buenorostro that he was "too old for a carrier position." Id at A7 (Buen Stat) at 1. As circumstantial evidence, Buenorostro claims that three younger letter carriers who were also on probationary periods were hired full-time by USPS. Id.

On May 8, 2001, Buenorostro and the USPS entered into a negotiated settlement agreement whereby Buenorostro withdrew his EEOC complaint and the USPS agreed to rehire/reinstate him at a different post office -- the Petaluma post office -- as a letter carrier subject to a new 90-day probationary period. Id at A1 (EEOC Sett Notice).

Buenorostro began his second probationary period as a part-time letter carrier at the Petaluma post office on May 19,

2001. His primary supervisors, Juli LoDolce and Todd Matthews, provided Buenorostro with a normal five-day training period with an experienced letter carrier, Dave Sartori. Doc #29 (Matthews Decl) at 2.

According to Matthews and LoDolce, it soon became apparent that Buenorostro was not satisfactorily performing his duties as a part-time flexible letter carrier. Buenorostro would take double and sometimes triple the amount of expected time to deliver mail. Doc #32 (LoDolce Decl) at 2; Mattehws Decl at 3. On at least one occasion, Buenorostro did not call in by 3:00 pm as he had been instructed to do if he was in danger of not completing his delivery route. Matthews Decl at 3. Consequently, Matthews was forced to send out another letter carrier to help Buenorostro finish his route. Id. Matthews asserts that several times he was unable to contact Buenorostro and would have to go out looking for Buenorostro on his route. Matthews asserts that, on more than occasion, Buenorostro failed to deliver the mail accurately, leading to at least one customer complaint. Id. On June 18, 2001, Matthews gave Buenorostro his 30-day job evaluation. In the categories of work quantity, work quality and work methods, Buenorostro received an "unacceptable" rating. In the categories of work relations and personal conduct, Buenorostro received a "satisfactory" rating. Id at 4.

Buenorostro's performance did not improve; it got worse. Specifically, on July 11, 2001, Buenorostro was observed engaging in unsafe driving practices. Id at 3, Ex A. Attempting to pinpoint Buenorostro's problems, Matthews and LoDolce had him shadowed by an experienced letter carrier, Luis Molina, for two

3

days to observe and inform Buenorostro regarding delivery errors and suggest how to increase efficiency. Matthews Decl at 2' Doc #31 (Molina Decl) at 2. Despite Molina's observation that Buenorostro was a nice, hard-working individual, Molina concluded that Buenorostro "just didn't have it in him" to be a letter carrier based upon his "significant and repeated trouble delivering the mail in a timely manner * * *." Id. Molina characterizes Buenorostro's errors as "overwhelming and egregious." Id.

On July 17, 2001, Buenorostro received his 60-day evaluation from Matthews; the ratings were identical to the 30-day ratings. Matthews Decl, Ex B. On August 1, 2001, Matthews informed Buenorostro that he was being terminated for failing to meet the requirements of a letter carrier position. Id, Ex C (Term Letter). Matthews cited Buenorostro's (1) failure to operate a postal vehicle in a safe manner, (2) failure to phone at 3:00 pm if in jeopardy of not meeting committed times and (3) failure to deliver mail accurately. Id.

On October 2, 2001, Buenorostro filed an EEOC complaint alleging that he was terminated from the Petaluma post office based on his age, national origin and in retaliation for his prior EEOC complaint. An EEOC ALJ concluded that the USPS did not discriminate against Buenorostro on any of these grounds; this decision was affirmed on September 11, 2003, and reconsideration was denied on December 11, 2003. On March 9, 2004, Buenorostro filed the current complaint in this court alleging age, national origin and retaliation discrimination against USPS arising from his termination from the Petaluma post office. Doc #1 (Compl).

Potter currently moves for summary judgment in his favor

4

on all of Buenorostro's claims, asserting that no genuine issue of material fact exists regarding the basis for Buenorostro's termination from the Petaluma post office. MSJ at 14. Buenorostro opposes. Doc #39.

## II

In reviewing a summary judgment motion, the court must determine whether genuine issues of material fact exist, resolving any doubt in favor of the party opposing the motion. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v Liberty Lobby, 477 US 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. And the burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp v Catrett, 477 US 317, 322-23 (1986). Summary judgment is granted only if the moving party is entitled to judgment as a matter of law. FRCP 56(c).

The nonmoving party may not simply rely on the pleadings, however, but must produce significant probative evidence, by affidavit or as otherwise provided in FRCP 56, supporting its claim that a genuine issue of material fact exists. TW Elec Serv v Pacific Elec Contractors Assn, 809 F2d 626, 630 (9th Cir 1987). The evidence presented by the nonmoving party "is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 US at 255. "[T]he judge's function is not himself to

5

1  weigh the evidence and determine the truth of the matter but to
2  determine whether there is a genuine issue for trial." Id at 249.
3      The evidence presented by both parties must be
4  admissible. FRCP 56(e). Conclusory, speculative testimony in
5  affidavits and moving papers is insufficient to raise genuine
6  issues of fact and defeat summary judgment. Thornhill Publishing
7  Co, Inc v GTE Corp, 594 F2d 730, 738 (9th Cir 1979).

### III

The court addresses first Buenorostro's claims of age discrimination and national origin discrimination.

#### A
*ADEA Claim*

Although Buenorostro's complaint alleges age discrimination in violation of the ADEA, he conceded in his deposition that no one at the Peataluma post office discriminated against him based on his age. Doc #33 (Olsen Decl), Buenorostro Depo (11/24/04) at 30:22-34:4. The following excerpts of the deposition transcript will illustrate Buenorostro's concession:

> Q: Did Todd Matthews ever tell you [that] you were too old to be a letter carrier?
>
> A: No
>
> Q: Did Todd Matthews ever raise any concerns about your age?
>
> A: No. On the contrary, he was a very good friend of mine, and helped me a lot at work.
>
> * * *
>
> Q: * * *. Did you ever tell Todd Matthews how old you were?

6

1       **A: No.**

2       **Q: And did you ever hear him make any comments at all about your age?**

3

4       **A: No.**

5       **Q: How about any other supervisor at the Petaluma Post Office, did they ever make any comments about your age?**

6

7       **A: No. We all had a really good relationship.**

8       **Q: Okay. How about Coper Dulin, did she ever make any comments about your age?**

9

10      **A: No.**

11      **Q: So why do you believe that you were discriminated against on the basis of your age?**

12

13      **A: Because of my age, that is what Terr[i] Thomas did. However, the reason I was terminated -- <u>the reason I was terminated in Petaluma was because of my previous complaint</u>. Because they didn't have any other reason.**

14

15

16      **Q: Okay, so correct me if I am wrong. You're saying that Terr[i] Thomas, in Santa Rosa, discriminated against you on the basis of your age?**

17

18      **A: Yes.**

19      **Q: And that you were discriminated against in Petaluma because of your prior EEO activity?**

20

21      **A: That's right**

22      **Q: <u>Did anyone in Petaluma discriminate against you on the basis of your age</u>?**

23      **A: <u>No</u>. No one.**

24      **Tr at 31:6-14, 32:24-34:4 (emphasis added).**

25      Buenorostro clearly testified that <u>the reason</u> (singular)

26 he was terminated from the Petaluma post office was his previous

27 EEOC complaint (i e, retaliation discrimination). He cannot

28 presently contradict this testimony to survive summary judgment by

7

arguing that he was discriminated against based on his age.  As this court has stated, "'[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.'"  <u>Martinez v Marin Sanitary Service</u>, 349 F Supp 2d 1234, 1242 (N D Cal 2004) (Walker, J) (quoting <u>Kennedy v Allied Mutual Ins Co</u>, 952 F2d 262, 266 (9th Cir 1991)).  Buenorostro offers no explanation at all, much less a sufficient explanation for this contradiction.  Id.

     Moreover, Buenorostro's <u>original</u> EEOC complaint was premised on Terri Thomas' alleged statements in 1998 at the Santa Rosa post office that Buenorostro was "too old" to be a letter carrier, Rutter Decl at A7, and thus Buenorostro is barred from reasserting this claim pursuant to the settlement agreement he entered into with the USPS on May 8, 2001.  Under the terms of the settlement agreement, Buenorostro, in exchange for being rehired/reinstated with USPS, agreed "not to institute a lawsuit under Title VII * * * or any other state or Federal law or regulation regarding these issues."  Rutter Decl at A1 (EEOC Sett Notice) at 2.  Because Buenorostro's first EEOC complaint was premised on Thomas' alleged statements, Buenorostro is now barred from premising his <u>current</u> age discrimination claim on this issue.

     Accordingly, Potter is entitled to summary judgment on Buenorostro's ADEA claim.

//
//
//

8

**B**

*National Origin Claim*

Buenorostro's national origin claim is similarly flawed. Aside from stating that the <u>only reason</u> for his termination from the Petaluma post office was his prior EEOC complaint, Buenorostro testified to the following regarding his national origin claim:

> Q: Okay, so I don't want to beat a dead horse. My understanding is that – may understanding is that your claim is that you were discriminated against for your prior EEO activity.
>
> A: Yes.
>
> Q: But do you believe that anyone in the Petaluma facility, not Santa Rosa, but in the Petaluma facility, do you believe that <u>anyone discriminated against you in Petaluma on the basis of your national origin</u>?
>
> A: <u>No</u>.
>
> Buenorostro Depo (11/24/04) at 36:9-18 (emphasis added).

Buenorostro now claims that Todd Matthews and Copper Dulin at the Petaluma post office discriminated against him on the basis of his national origin. Doc #39 at 12. Again, Buenorostro offers no explanation for this contradiction and thus he fails to raise a genuine issue of material fact sufficient to survive summary judgment on his national origin claim. <u>Martinez</u>, 349 F Supp 2d at 1242.

**IV**

Unlike his ADEA claim and national origin Title VII claim, Buenorostro has consistently maintained that he was terminated from the Petaluma post office in retaliation for filing

the original EEOC complaint stemming from his termination at the Santa Rosa post office.

To establish a prima facie case of retaliation under Title VII, Buenorostro "must demonstrate that (1) [he] had engaged in a protected activity; (2) [he] was thereafter subject by his employer to an adverse employment action; and (3) a causal link existed between the protected activity and the adverse employment action." Porter v California Dep't of Corrections, 383 F3d 1018, 1029 (9th Cir 2004) (citing Ray v Henderson, 217 F3d 1234, 1239-40 (9th Cir 2000)). If Buenorostro makes out a prima facie case, the burden shifts to Potter to articulate a legitimate, nondiscriminatory reason for terminating Buenorostro. Id. If Potter sets forth such a reason, Buenorostro "bears the ultimate burden of submitting evidence indicating that [Potter's] proffered reason is merely a pretext for a retaliatory motive." Id. As to circumstantial evidence, the Ninth Circuit instructs that a plaintiff "must proffer 'substantial' and 'specific' evidence of pretext to overcome [a defendant's] motion for summary judgment." Stegall v Citadel Broadcasting Co, 350 F3d 1061, 1066 (9th Cir 2003) (quoting Manatt v Bank of America, 339 F3d 792, 801 (9th Cir 2003)).

Potter does not dispute that Buenorostro engaged in a protected activity in filing the original EEOC complaint after his termination from the Santa Rosa post office. MSJ at 12. Moreover, Potter concedes that Buenorotro was subject to an adverse employment action: He was terminated. Id. Potter argues, however, that Buenorotro has failed to demonstrate a causal link between the prior EEOC complaint and his termination from the

10

Petaluma post office.  Id.  The court agrees.

      Buenorostro himself admits that he did not tell Matthews about his original EEOC complaint until <u>after</u> Matthews had given Buenorotro his negative 30- and 60-day evaluations.  Opp at 14.  Matthews asserts that he did not know of Buenorostro's EEOC complaint <u>prior</u> to Buenorostro telling him about it, Doc #29 (Matt Decl) at 4, and Buenorostro offers no evidence to the contrary.  Accordingly, the 30- and 60-day evaluations describing Buenorostro's work performance as unacceptable could not have been the product of a retaliatory motive; Matthews did not even know about the prior EEOC complaint.

      Assuming arguendo that Buenorostro has made out a prima facie case of retaliation (which he has not), Potter has articulated a legitimate, nondiscriminatory reason for terminating Buenorostro:  His unacceptable job performance (e g, unsafe driving, mistakes in delivering mail, untimely mail delivery).  Buenorostro has failed to submit specific and substantial evidence indicating that this reason is a pretext for retaliation.  Rather, Buenorostro conclusorily states that he was "set-up to fail" because he was "given too much mail and was unable to finish the route" on time.  Opp at 6, 15.  Buenorostro provides no evidence in support of this argument, much less specific and substantial evidence; he simply offers his conclusions and speculations.  Conclusory and speculative testimony is insufficient to raise genuine issues of fact and defeat summary judgment.  <u>Thornhill Publishing Co</u>, 594 F2d at 738.

//

//

V

In sum, the court GRANTS Potter's motion for summary judgment (Doc #28).  The clerk is directed to CLOSE the file and TERMINATE all motions.

SO ORDERED.



VAUGHN R WALKER

United States District Chief Judge